POLLOCK v. QUEENS LAND & TITLE CO.

(Supreme Court, Appellate Division, Second Department.    December 28, 1911.)

1. DAMAGES (§ 163*)—MEASURE—EVIDENCE.

One should not be denied recovery of damages because they are difficult of ascertainment, and because he cannot produce the most satisfactory evidence, but, where there is a proper measure, he is bound to establish a right to recover thereunder, and not under a different measure.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 454–459; Dec. Dig. § 163.*]

2. VENDOR AND PURCHASER (§§ 350, 351*)—BREACH OF CONTRACT.

On a vendor's breach of contract to connect the premises with a municipal water system, performance by the vendor being prevented by condemnation of intervening lands, the purchaser's proper measure of damages is the difference in the value of the premises with and without the water connection contracted for, depending upon adequacy of the supply, etc., and it was error to permit him to show the cost of installing an adequate private water system.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1043–1058; Dec. Dig. §§ 350, 351.*]

Appeal from Trial Term, Nassau County.

Action by Fred J. Pollock against the Queens Land & Title Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Francis R. Stoddard, Jr. (George F. Hurd, on the brief), for appellant.

Joseph H. Radigan, for respondent.

WOODWARD, J. [1, 2] The plaintiff purchased certain premises of the defendant, agreeing to construct a house thereon which should be of the value of $5,000. It is conceded that the plaintiff performed his part of the contract. The contract between the parties required the defendant to "connect the house with the water system already installed at Massapequa, on or before the completion of the said house," and the evidence is undisputed that the defendant has failed to perform this part of the contract, though having put in a temporary pumping plant, and supplying a man to do the pumping. It is practically conceded that the defendant is liable to the plaintiff for some damages, although it is contended that the defendant has been prevented from making the connection promised by the intervention of the city of New York in condemning the intervening lands for water supply purposes, but it is urged that the learned trial court erred in receiving certain testimony as to the cost of installing a different water supply system, and in permitting the jury to find the plaintiff's damages upon such testimony.

The plaintiff, a witness in his own behalf, was asked:

"Concerning an adequate water system, I ask you whether or not you made inquiries as to what cost one would be? A. I ordered it. I ordered a Kewanee system water plant installed in my house. The expense of the plant will be $512."

Counsel for defendant objected and moved to strike out the answer, but it was retained by the court, on the theory that the defendant agreed to establish a water connection, and that this went to the measure of damages. Subsequently an expert witness was called as to the cost of installing this same kind of a water system, and, over the objection and exception of the defendant, was permitted to testify that a Kewanee system would cost about $650, and the jury brought in a verdict for $600. This is the only testimony which would in any manner justify the verdict of the jury, and the question presented is whether this was the proper measure of damages. There are cases, it is true, where it is very difficult to determine the proper measure of damages, or to afford the evidence, and in such cases the party is not denied recovery because he cannot produce the most satisfactory evidence, but, where there is a proper measure of damages open to the plaintiff, we are of the opinion that he is bound to establish that measure of damages. The defendant in this case had not agreed to furnish water. It had undertaken to "connect the house with the water system already installed at Massapequa," and the proper measure of damages, it seems to us, was the difference in the value of the premises purchased from the defendant, with the house added, with the water connection made and without it. This would, of course, depend in a measure upon the adequacy of the supply, its adaptability to the purposes of a residence, etc., and none of these things were contemplated in the contract. The water supply system was not owned by the defendant. It merely undertook to procure a connection with this particular system, the plaintiff taking all of the chances as to the quality and adequacy of the supply, and evidence of the cost of some other system is obviously not the true measure of damages. Certainly it would not be competent to produce evidence of the cost of installing a water system equal to that which had been installed in Massapequa, and to connect with the same. Equally certain is it that it would not be competent to afford testimony as to the cost of constructing a long pipe line to furnish the plaintiff's house, for the defendant did not undertake to supply water, but to make a connection with a then existing water supply system, owned by a distinct corporation. If not competent to establish the cost of these systems, how can it be competent to show the cost of any other system, when it was a simple matter for the plaintiff to have furnished evidence of the value of the premises with and without the water connection which was promised him? The measure of damages suggested above appears to be that which was recognized as the true one in Brooklyn Hills Imp. Co. v. N. Y. & R. B. R. Co., 80 App. Div. 508, 81 N. Y. Supp. 187, affirmed without opinion 178 N. Y. 593, 70 N. E. 1096, and we are of the opinion that the learned court at Trial Term erred in permitting testimony as to the cost of a system which the defendant had not contracted to install, and which was not shown to be of the same capacity.

The plaintiff contracted for a particular thing, and he is entitled to all the damages which directly grew out of the failure of the defendant to provide that particular thing, but he is not entitled to the cost

of installing "an adequate water system," for the defendant at no time promised or agreed to furnish such a system. "An adequate water system" for a $5,000 residence might cost $500 or $5,000,000 according to its location with reference to an adequate supply of pure and wholesome water, and the only thing fairly within the contemplation of the parties to this contract was that the defendant should procure a connection with an existing water supply system. When this was done, the water supply company assumed the obligation of furnishing the water, and the proper measure of damages, and the only one it seems to us, is the difference in the value of the premises without this particular connection and their value with it. Upon this point the defendant would have a right to show that the system in operation at the time of the contract had ceased to exist, or that it did not supply sufficient water, or any other condition going to show that the promised connection was of little or no value to the premises. Instead of that, the defendant is called upon to pay the cost of "an adequate water system" selected by the plaintiff. Suppose that it had been necessary to get a right of way and to lay ten miles of pipe, and to furnish machinery, men, etc., to pump the water in order to furnish "an adequate water system." Would it have been the defendant's duty to do this, would that have been the measure of damages? Obviously not. If this is true, then the question of an adequate supply was not properly in issue in this action.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event.

JENKS, P. J., and THOMAS and CARR, JJ., concur. BURR, J., concurs in result.