396 So.2d 753 (1981)
George V. HOURIHAN and Katrina A. Hourihan, Appellants,
v.
GROSSMAN HOLDINGS LIMITED, Bleeman Holdings Limited, the Meridian Group Limited and Markborough Properties Limited, Appellees.
No. 80-670.
District Court of Appeal of Florida, Third District.
March 24, 1981.
Rehearing Denied April 28, 1981.
*754 Wilson E. Hodge, Homestead, for appellants.
Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wolff and Rudolph F. Aragon, Miami, for appellees.
Before BARKDULL, HENDRY and NESBITT, JJ.
NESBITT, Judge.
Appellants (buyers) bring this appeal from the final judgment of the trial court which found the appellees (sellers/contractors) in breach of a contract to build a house for appellants but awarded no damages. Appellees cross-appeal from the finding that they breached the contract. We affirm the trial court's holding as to the appellees' breach of the contract but reverse and remand that part of the judgment which failed to award damages.
Appellants entered into a sale contract to purchase a house to be built by appellees on a particular lot. The contract provided that appellees would construct a dwelling on the lot "which is substantially the same as either the plans and specifications therefor on file at Seller's office, or, if constructed, the model therefor located in Seller's model area... ." Prior to the commencement of the construction, the buyers learned of and remonstrated against the contractors' plan to build the house as a "mirror image" of the plans and model shown to the buyers when they entered into the contract. Their desire that the house be constructed in accordance with the plans was so that they could obtain the optimal benefit of the prevailing winds which would minimize the need for air conditioning as well as for *755 esthetic reasons.[1] Nonetheless, the contractors erected a mirror image of the dwelling. The buyers then commenced this action for breach of contract. At the conclusion of the bench trial, the trial court found the builders had breached their contract by building the mirror image but denied all money damages to the buyers on the ground that the award of money damages under the circumstances would constitute economic waste and because the value of the house as constructed had enhanced substantially over the contract price.
We agree with the appellants' contention that the trial court applied the wrong measure of damages.
In Edgar v. Hosea, 210 So.2d 233 (Fla. 3d DCA 1968), this court aligned itself with what is now complained of as being the minority view as follows:
[D]amages for a contractor's breach of a contract to construct a dwelling, where it is not constructed in accordance with the plans and specifications, are the amount required to reconstruct it to make it conform to such plans and specifications, rather than the difference in loan or market value on the finished dwelling, since unlike a commercial structure, a dwelling has an esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good.
210 So.2d at 234.
The appellees insist that: (a) application of the foregoing rule violates the fundamental concept that compensatory damages are not awardable where to do so would constitute economic waste; and (b) the application of Edgar v. Hosea, supra, would require a whole or partial dismantling or reassembling of a useable building. 13 Am.Jur.2d Building and Construction Contracts § 79. In this case, the rule against economic waste has no application for at least two reasons. First, as is made plain by Section 346 of the Restatement of Contracts, the rule is applicable only to instances for "unavoidable harm that the builder had reason to foresee... ." [emphasis supplied] Secondly, it is clear that the rule for economic waste is applicable to commercial buildings rather than residential dwellings. Edgar v. Hosea, supra.
Moreover, in this case it is clear that the appellees/contractors may not proclaim that they substantially complied with the contract, because there was a willful and intentional failure to perform in accordance with the plans and specifications over the buyers' protests. 13 Am.Jur.2d Building and Construction Contracts § 81; Annot., 76 A.L.R.2d 805, 823 (1961); D.B. Dobbs Law of Remedies § 12.21 at 899 (1973).
The rule in Edgar v. Hosea, to which we re-adhere, has not had the pernicious effect complained of by the building industry. We take judicial notice of the burgeoning construction of residences, notwithstanding that holding pronounced over twelve years ago. Indeed, it is our view that any other rule would be contrary to the pride of ownership that average homeowners expect when entering into what probably is the largest investment they will ever undertake  one which they may live with the greater portion of their lives.
The appellees also contend that the buyers were not damages because the house had increased in value so as to offset the damages resulting from the breach. Whether the increase is illusory, because it is purely a result of inflation, or real, because of a general increase in the value of the home, this argument cannot aid the appellees. Upon entering into the contract to purchase the home, any increase in value (or decrease, for that matter) rightfully belongs to the buyers. See, e.g., Gassner v. *756 Lockett, 101 So.2d 33 (Fla. 1958); Stupner v. Cacace, 231 So.2d 525 (Fla. 3d DCA 1970). Had the appellees constructed the house as contracted for, the buyers would have reaped the benefit of the increase in value of that home. Likewise, had the value of the home decreased, due to market conditions, the buyers would suffer the loss. Surely, the appellees do not suggest the buyers' damages would be increased due to a drop in value. Consequently, the trial court improperly applied the increase in the value of the home to offset the damages.
The appellees/contractors have cross-appealed the trial court's finding that they breached the contract. There is no contention that the trial court did not have competent and substantial evidence before it on which to render its decision. Instead, appellees assert that the trial court misapplied O'Neill v. Broadview, Inc., 112 So.2d 280 (Fla. 2d DCA 1959). Their reliance on that decision is wholly misplaced. There, the trier of fact found in favor of the contractor in a similar instance where it had erected a "mirror image" home on the basis that only a unilateral mistake by the buyer had occurred for which the remedy of cancellation was inappropriate. In addition, in O'Neill, there was no discussion as to the dwelling's placement on the lot in conformity with the model.
For the foregoing reasons, the final judgment in favor of the appellants is affirmed as to the breach of the contract. The judgment with respect to the issue of damages is reversed and remanded for a new trial.
NOTES
[1] Buyers were shown plans whereby the master bedroom, the "Great" room, and the living room would have a southeastern exposure thereby enabling them to take advantage of the tradewinds. The mirror image faced north and allegedly blocked off the winds. Additionally, the buyers would have had a view of the residential area. Instead, they now could view the "scenic" traffic of a major artery.