414 So.2d 1037 (1982)
GROSSMAN HOLDINGS LTD., et al., Petitioners,
v.
George V. HOURIHAN, and Katrina A. Hourihan, Respondents.
No. 60692.
Supreme Court of Florida.
April 15, 1982.
Rehearing Denied June 28, 1982.
*1038 Alan T. Dimond and Rudolph F. Aragon of Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, Miami, for petitioners.
Wilson E. Hodge, Homestead, for respondents.
Alan S. Becker and Charles R. Morgenstein of Becker, Poliakoff & Streitfeld, Fort Lauderdale, for amicus curiae.
Stephen W. Metz, and Robert M. Rhodes and James C. Hauser of Messer, Rhodes & Vickers, Tallahassee, for Florida Home Builders Ass'n, amicus curiae.
McDONALD, Justice.
We have for review Hourihan v. Grossman Holdings Ltd., 396 So.2d 753 (Fla.3d DCA 1981), which conflicts with Bayshore Development Co. v. Bonfoey, 75 Fla. 455, 78 So. 507 (1918), and Oven Development Corp. v. Molisky, 278 So.2d 299 (Fla. 1st DCA 1973), regarding the proper measure of damages for breach of a construction contract. We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and disapprove the measure of damages applied by the third district in the instant case.
Late in October 1978 the Hourihans contracted with Grossman Holdings to purchase a house to be built in a planned development. Both the model and the office drawings showed the house with a southeast exposure, and the contract stated that Grossman would construct the house "substantially the same" as in the plans and specifications at the seller's office or as the seller's model. In December a new drawing went on display in the Grossman offices. It showed, among others, the Hourihan's lot and their soon-to-be-built house; unfortunately, the house in the new drawing faced the opposite way from what they expected and wanted.
The Hourihans brought this discrepancy to the attention of Grossman's employees and remonstrated against construction of a mirror image of the house they had contracted for. In spite of the Hourihan's objections, the contractors refused to change their plans and began constructing the house depicted in the December drawing. The Hourihans then sued in circuit court for breach of contract.
After a bench trial, the court found that Grossman had breached its contract. The court refused to award damages, however, finding that specific performance would be economically wasteful and out of proportion to the good to be attained and that the value of the house had increased substantially since the date of the contract. The district court agreed with the trial court's finding that the contract had been breached, but found that it had applied the incorrect measure of damages. Relying on Edgar v. Hosea, 210 So.2d 233 (Fla.3d DCA 1968), the third district held that the unreasonable economic waste doctrine does not apply to residential construction. It further *1039 found that Grossman's willful and intentional failure to perform according to the plans and specifications nullified its claim of substantial compliance with the contract. The court found the proper damages to be that amount necessary to reconstruct the dwelling to make it conform to the plans and specifications and remanded for a new trial on damages.
Grossman contends that Bayshore Development and Oven Development state the proper rule for determining the measure of damages for improperly constructed residences. These cases hold that the proper measure of damages is the difference in value between the building as constructed and as it should have been constructed. Grossman claims that subsection 346(1)(a) of the Restatement (First) of Contracts (1932) supports the diminution of value theory and urges this Court to adopt the Restatement as this state's law regarding damages for breach of a construction contract.
Subsection 346(1)(a)[1] of the Restatement provides as follows:
(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:
(a) For defective or unfinished construction he can get judgment for either
(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.
The comment on subsection 346(1)(a) states:
The purpose of money damages is to put the injured party in as good a position as that in which full performance would have put him; but this does not mean that he is to be put in the same specific physical position. Satisfaction for his harm is made either by giving him a sum of money sufficient to produce the physical product contracted for or by giving him the exchange value that that product would have had if it had been constructed. In very many cases it makes little difference whether the measure of recovery is based upon the value of the promised product as a whole or upon the cost of procuring and constructing it piecemeal. There are numerous cases, however, in which the value of the finished product is much less than the cost of producing it after the breach has occurred. Sometimes defects in a complete structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable. The law does not require damages to be measured by a method requiring such economic waste. If no such waste is involved, the cost of remedying the defect is the amount awarded as compensation for failure to render the promised performance.
Subsection 346(1)(a), therefore, is designed to restore the injured party to the condition he would have been in if the contract had been performed. This aim corresponds with general Florida law. See Campbell v. Rawls, 381 So.2d 744 (Fla. 1st DCA 1980); Lake Region Paradise Island, Inc. v. Graviss, 335 So.2d 341 (Fla.2d DCA 1976). We adopt subsection 346(1)(a) as the law in Florida regarding breaches of construction contracts.[2]
*1040 Applying subsection 346(1)(a) to the instant case, we find that the district court reached an incorrect conclusion. The subsection itself makes no distinction between residential and nonresidential construction. Indeed, the illustrations contained in the Restatement deal with both types of buildings. We disagree with the district court's conclusion that the rule as enunciated in subsection 346(1)(a)(ii) is applicable only to commercial buildings.[3]
Grossman also complains that the district court's ruling awards damages that are punitive in nature. Punitive damages are not recoverable for breach of contract, but where the acts constituting the breach also amount to a cause of action in tort, punitive damages may be recovered. Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976); Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957). The Hourihans, however, presented only the breach of contract issue to the district court. The amount of compensatory damages flowing from a breach of contract is not affected by the manner of the breach.
Turning to the trial court's judgment, we agree in part and disagree in part with its findings. The record supports the trial court's finding that reconstructing the house would result in economic waste, and we will not disturb this finding. On the other hand, we find the trial court's refusal to consider awarding damages because of the then-current value of the house to be incorrect.
Damages for a breach of contract should be measured as of the date of the breach. National Communications Industries, Inc. v. Tarlini, 367 So.2d 670 (Fla. 1st DCA 1979); Lake Region Paradise Island, Inc. v. Graviss, 335 So.2d 341 (Fla.2d DCA 1976). Fluctuations in value after the breach do not affect the nonbreaching party's recovery. Here, it may be possible to demonstrate a difference in value as of the date of delivery between the house the Hourihans contracted for and the house that Grossman built. If such difference exists, the Hourihans should have the opportunity to prove it on remand and recover that amount as damages.
We therefore disapprove the measure of damages applied by the district court, but we agree that the case should be remanded for a new trial on damages.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON and EHRLICH, JJ., concur.
ALDERMAN, J., dissenting:
I would approve the decision of the District Court of Appeal.
NOTES
[1] Similar provisions are contained in Restatement (Second) of Contracts § 348(2) (1981), but we prefer the language in Restatement (First).
[2] Several Florida courts have issued opinions which, in essence, apply subsection 346(1)(a), but without mentioning the Restatement. Temple Beth Sholom v. Thyne Constr. Corp., 399 So.2d 525 (Fla.2d DCA 1981); Deltona Corp. v. Jannotti, 392 So.2d 976 (Fla. 1st DCA 1981); Gory Associated Indus., Inc. v. Jupiter Roofing & Sheet Metal, Inc., 358 So.2d 93 (Fla. 4th DCA 1978); B & J Holding Corp. v. Weiss, 353 So.2d 141 (Fla.3d DCA 1977).
[3] Restatement (First) of Contracts § 346 illustration 2 (1932).