423 So.2d 559 (1982)
L.J. McCRAY, Appellant,
v.
Wilbur G. MURRAY and Jeannette Murray, His Wife, Appellees.
No. AM-218.
District Court of Appeal of Florida, First District.
December 15, 1982.
*560 S. Austin Peele of Darby, Peele, Page & Bowdoin, Lake City, for appellant.
James J. Taylor, Jr., of Wahl & Gabel, Jacksonville, for appellees.
MILLS, Judge.
McCray, defendant below, asserts that the trial court improperly instructed the jury on the issue of damages in this breach of contract case and that he should be granted a new trial on that issue. We disagree and affirm.
In 1972, Murray entered into an oral contract with McCray whereby McCray was to construct a fish pond on Murray's property. In return for constructing the pond, McCray was to receive the dirt from the excavation which he could then resell at a profit to some third party. The pond was to be 240 feet by 230 feet by 8 feet, the sides were to be sloped, and a berm (a narrow lip at the top of the pond to prevent erosion) was to be built. Additionally, the bottom was to be lined with clay to help insure that the pond held water. According to Murray, McCray dug the hole and hauled away the dirt but did none of the other things. Murray subsequently brought suit, alleging breach of contract, unjust enrichment, and unlawful conversion.
At trial, Murray testified that the hole left on his property measured approximately 240 feet by 230 feet by 8 feet and that approximately 16,300 cubic yards of soil had been removed at the time McCray removed his equipment from the site. McCray testified that he was charging $1.25 to $1.50 per cubic yard for soil that he sold in 1972.
At the close of all the evidence, the trial court instructed the jury that "[i]f you find that L.J. McCray, as part of his contract with Wilbur Murray, agreed to do all the necessary construction to build a fish pond for Wilbur Murray, and that L.J. McCray totally breached that contract, your verdict should be for Wilbur and Jeannette Murray, the plaintiffs, in the amount which will allow them to restore their property to the condition it was before the contract was made." Thereafter, the jury returned a verdict for the plaintiffs in the amount of $20,000.
*561 McCray asserts that this instruction was improper and that the jury should have been instructed in accordance with the measure of damages set forth in Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037 (Fla. 1982). In Grossman, the Florida Supreme Court adopted subsection 346(1)(a) of the Restatement (First) of Contracts (1932) as the proper measure of damages in cases involving the breach of a construction contract. Stated simply, that subsection says that, depending upon whether completion of the construction would involve economic waste, the proper measure of damages is either the cost of completion or the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff. McCray's assertion of error is without merit because, in addition to the instruction quoted above, the jury was instructed that "[t]he measure of damages for breach of contract when a contractor fails to complete the improvement in accordance with his contract is the costs to the plaintiff in correcting the defect or completing omissions of the defendant." We hold that this instruction complied with the requirements of Grossman.
There was evidence from which the jury could have found that this case involved a total breach of contract as opposed to a partial breach. In cases of total breach, the plaintiff is entitled to an election of remedies. He may "treat the contract as void and seek those damages which will put him in the same position as he was immediately prior to making the agreement. His alternative is to affirm the contract, insist on the benefit of his bargain, and seek those damages which will place him in the position he would have been if the contract had been completely performed." Sundie v. Lindsay, 166 So.2d 152, 153 (Fla. 3d DCA 1964). There was therefore no error in awarding Murray the cost of restoring his property to its original condition.
McCray's remaining contention is also without merit. There was sufficient evidence from which the jury properly could have found that the cost of restoring Murray's property to its original condition at the time of the breach was $20,000.
AFFIRMED.
ROBERT L. SMITH, Jr., C.J., and McCORD, J., concur.