LOGAN, WALT, Associate Judge.
Peach State Roofing, Inc. (Peach State), appeals a final judgment awarding damages to 2224 Trail Corp. (Trail) on its claim for breach of contract. We hold that the trial court improperly found an implied term in a contract which by its terms was clear and unambiguous and that there was a failure to prove damages as of the date of the breach. We therefore reverse the final judgment in its entirety and remand to the trial court for entry of judgment in favor of Peach State.
Peach State contracted on August 2, 2001, with Trail to put a new roof on Trail’s forty-year-old, 26,500-square-foot commercial building. The contract required Peach State to (1) “remove and discard existing roof system,” and (2) “furnish and install Carlisle Single Ply membrane roof system,” for a feed price of $63,500. The parties agreed that the contract provided that the contractor would be compensated for any required repairs to the metal decking that supports the roof system at $3.50 per square foot. Trail does not contend that this provision required replacing the metal deck. The work was completed about December 20, 2001, with no charges having been made for metal deck repair.
On September 2, 2004, Trail filed suit against Peach State alleging that Peach State had breached the contract “by failing to properly remove and replace the roof’ and that Trail “has suffered and will suffer damages including, but not limited to, repair costs, loss of rental income and costs incurred as a result of the water damage experienced from the improper roof repair/replacement.”
Trail’s expert witness, Mr. Albritton, described the roof as, “basically, an elastom-eric sheet that is installed over top of roof insulation boards that are sitting on top of a lightweight insulated concrete that is poured in place over a metal roof deck.” He inspected portions of the roof in April and May of 2006, almost five years after the work had been completed. He observed an amount of corrosion in the metal decking. He also stated that in his opinion it was industry practice for the roofing contractor to notify the owner of the existence of corrosion. Mr. Albritton admitted he had no way to know the condition of the decking at the end of 2001, when Peach Tree completed its contract.
Trail offered no evidence of the condition of the metal deck or the roof as it was in 2001. Moreover, Trail offered no evidence of “repair costs, loss of rental income and costs incurred as a result of water damage,” as it alleged in the complaint as damages.
The trial court specifically held that the contract did not require Peach State to remove and replace the existing metal decking but found that the “decking underlying the roofing system ... was in a seriously deteriorated condition at the time” Peach State performed the contract. The trial court also found that there was an implied term in the contract based on custom and usage which required Peach State to “notify the owner if the deck underlying the roof system is in a deteriorated condition” and held that Peach State had breached the contract by failing to notify Trail that the metal decking was deteriorated, thus enabling Trail to decide whether to replace it. The trial court further found that both the roof system and the metal decking would have to be replaced and that the current cost to accomplish such task would be $364,000. It then awarded Trail $364,000 in damages against Peach State. It is noteworthy that the trial court did not find, nor did Trail argue on appeal, that Peach State had installed the Carlisle roof system improperly. Further, the trial court did not find *445 that the deteriorated metal decking was the cause of any leaks.
The review of a trial court’s interpretation of a contract is de novo. Leopold v. Kimball Hill Homes Fla., Inc., 842 So.2d 133, 136 (Fla. 2d DCA 2003) (“[QJuestions of law are reviewed under the de novo standard.”). Moreover, the trial court’s findings are entitled to be affirmed only when there is competent, substantial evidence to support them. Id. Further, “where a contract is clear and unambiguous, the express contract terms may not be varied by resort to extrinsic evidence, including that related to the UCC obligation of good faith or custom and usage.” Caulkins Indiantown Citrus Co. v. Nevins Fruit Co., 831 So.2d 727, 735 (Fla. 4th DCA 2002).
First, Trail failed to provide any evidence to support the trial court’s finding that the metal decking was in a seriously deteriorated condition at the time of contract performance. Therefore, the trial court’s finding in that regard is not supported by competent, substantial evidence and cannot be affirmed.
Second, the trial court found no ambiguity in the language of this contract as a predicate to support its holding that it contained an implied term. It simply accepted Mr. Albritton’s opinion concerning customary practice. “[B]efore a trial court can consider such extrinsic evidence in interpreting a contract, the words used must be unclear such that an ambiguity exists on the face of the contract.” Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995). This contract unambiguously required Peach State to remove the old roof system and install the new Carlisle roof system for a firm, fixed price. Without a finding of ambiguity, the trial court erred in holding that the contract included an implied term based on custom and practice. “Florida courts have consistently declined to allow the introduction of extrinsic evidence to construe such an ambiguity because to do so would allow a trial court to rewrite a contract with respect to a matter the parties clearly contemplated when they drew their agreement.” Id. In Metro Development Group, L.L.C. v. 3D-C & C, Inc., 941 So.2d 11, 14 (Fla. 2d DCA 2006), this court quoted Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955), as follows: “It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.”
We conclude that since Peach State had no obligation under the contract to replace the metal decking, it cannot reasonably be charged with the cost of replacing it now. It is also apparent that without a finding that the Carlisle roof system was itself defective, or defectively installed, Peach State cannot be charged with the cost of removing it and installing yet another new system.
Finally, we address damages. Counsel for Trail acknowledged at oral argument that the claimed date of breach was the completion date for the work done by Peach State, i.e., December 2001. Damages for breach of contract should be measured as of the date of the breach. Grossman Holdings, Ltd. v. Hourihan, 414 So.2d 1037, 1040 (Fla.1982) (“Damages for a breach of contract should be measured as of the date of the breach.”). The trial court erred in holding that damages should be the cost of replacing the entire roof in December 2006, five years after the breach.
We reverse the trial court’s final judgment in favor of Trail and remand for *446 entry of judgment in favor of Peach State. Because we reverse the final judgment, we also reverse the award of attorney’s fees and costs.
Reversed and remanded.
NORTHCUTT, C.J., and DAVIS, J., Concur.