DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CANO, INC.,**
Appellant,

v.

**MICHEL JUDET,**
Appellee.

No. 4D20-1509

[September 22, 2021]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Barbara W. Bronis, Judge; L.T. Case No. 562017CA001434AXXXHC.

Christopher B. Hopkins of McDonald Hopkins LLC, West Palm Beach, Ryan V. Kadyszewski of Ryan V. Kadyszewski, P.A., Palm Beach Gardens, and Mike Piscitelli and Jodi Cohen of Vezina, Lawrence & Piscitelli, P.A., Fort Lauderdale, for appellant.

Michael G. St. Jacques, II of MGS Law, P.A., Jupiter, for appellee.

WARNER, J.

Cano, Inc. appeals a final judgment in favor of Michel Judet for the amount that Judet overpaid Cano for work done pursuant to a construction contract which Cano breached. Cano claims that the trial court used the wrong measure of damages for breach of a construction contract. The trial court awarded damages to return Judet to his pre-contract position less the quantum meruit value of Cano's services. Under the circumstances of this case, the measure of damages was proper. We also find no reversible error as to the other issues raised. We thus affirm.

In 2016, Judet's home was damaged by lightning, and he entered into a written contract with Cano to repair the damage for a fixed price of $300,000 payable in $30,000 increments. Pursuant to the contract, Cano started work. Judet made $90,000 in payments. When Judet discovered that Cano had not obtained some of the building permits for the construction, he terminated Cano.

As a result, Cano filed a construction lien on the property for $40,000 which it claimed was due. Cano sued Judet seeking to foreclose on the lien and sued Judet for breach of contract and unjust enrichment. Judet answered and counterclaimed for breach of contract. Judet sought discharge of the lien, restitution for the amount he paid Cano in excess of the value of the work, costs of storage of his household goods during construction, and disgorgement of monies paid for unpermitted work. Cano answered, denying it had breached the contract.

In the pre-trial stipulation, the parties stipulated that permits had not been obtained for the electrical or plumbing work. At the non-jury trial, both parties presented experts as to the reasonable value of the work performed. Judet's expert placed the value of the work performed by Cano at $49,150. The expert also testified that Judet contracted with him to finish the repairs on the house at a cost of approximately $160,000 with extras. At the close of the evidence, the court expressed the opinion that Judet's expert was more knowledgeable about the values in the community than Cano's expert.

The court requested each party to submit a proposed final judgment. After receiving the proposed final judgments and waiting approximately thirty days, the court entered the final judgment proposed by Judet.[1] The trial found that Cano committed the first material breach of the contract by failing to obtain the required permits and by failing to substantially perform its obligations under the contract. Thus Cano was only entitled to the value of the work performed which the court found to be $49,150, consistent with Judet's expert. The court found Cano's expert not to be credible.

As Judet had already paid Cano $90,000, the court entered a judgment of $40,850 in favor of Judet on his counterclaims, the difference between the quantum meruit value of the work and what Judet paid. It found in favor of Judet on all of Cano's claims and found Cano's claim of lien invalid. Cano appeals the final judgment.

---

[1] Cano claims that the court violated *Perlow v. Berg-Perlow*, 875 So. 2d 383 (Fla. 2004), in entering Judet's proposed final judgment. *Perlow* is inapposite. What occurred in this case is more in line with *Strand v. Escambia County*, 992 So. 2d 150 (Fla. 2008). Here, the trial court did indicate some findings on the record, including that Judet's expert was more believable than Cano's expert. It also accepted proposed final judgments from both parties and then did not sign Judet's proposed final judgment for another thirty days after they both were submitted, giving each party ample time to object.

Cano contends that the court used the wrong measure of damages in entering judgment for Judet. "Whether the trial court applied the correct measure of damages is a question of law reviewed de novo." *DFG Grp., LLC v. Heritage Manor of Mem'l Park, Inc.*, 237 So. 3d 419, 421 (Fla. 4th DCA 2018) (citing *Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77 So. 3d 667, 673 (Fla. 3d DCA 2011)).

Where a contractor breaches a construction contract, and the owner sues for breach of contract and the cost to complete, the measure of damages is the difference between the contract price and the reasonable cost to perform the contract. *See Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1039–40 (Fla. 1982). In *Grossman*, the supreme court adopted subsection 346(1)(a) of the Restatement (First) of Contracts (1932), which it concluded was "designed to restore the injured party to the condition he would have been in if the contract had been performed." *Id.* at 1039. In other words, the owner will obtain the benefit of his bargain. But where there is a total breach of the contract as opposed to a partial breach, an injured party may elect to treat the contract as void and seek damages that will restore him to the position that he was in prior to entering into the contract or the party may seek the benefit of his bargain. *See McCray v. Murray*, 423 So. 2d 559, 561 (Fla. 1st DCA 1982).

*Forbes v. Prime General Contractors, Inc.*, 255 So. 3d 448 (Fla. 2d DCA 2018), explains the alternative measures of damages in a construction contract case. In that case, the homeowners, the Forbeses, hired a contractor, Prime, to remodel their home and entered into a contract with periodic draws. Before the job was very far along, Prime determined that the cost of materials had increased and demanded almost twice the contract price. The Forbeses refused to sign a change order to that effect, and Prime walked off the job, leaving the home "unfinished and uninhabitable." Eventually, the Forbeses sued Prime for breach of contract. After trial, the court found that Prime had materially breached, but awarded only a small amount of damages. The trial court concluded that "[t]he purpose of contract damages is to put the injured party in as good a position as that in which full performance would have put him" and the Forbeses had not presented evidence of the difference between the market value of the home had it been completed and the value of the construction which the contractor had furnished.

Reversing the trial court, the Second District noted that an owner had two alternative remedies:

> When a party seeks damages for a total breach, "[the party] may treat the contract as void and seek the damages that will

restore [the party] to the position he was in immediately prior to entering the contract." *Rector* [*v. Larson's Marince, Inc.*], 479 So. 2d [783,] 785 [Fla. 2d DCA 1985]; *see also McCray v. Murray*, 423 So. 2d 559, 561 (Fla. 1st DCA 1982). Or, in the alternative, [the party] may instead "affirm the contract, 'insist upon the benefit of [the] bargain, and seek the damages that would place [the party] in the position [which the party] would have been in had the contract been completely performed.' " *Tubby's Customs,* [*Inc. v. Euler,*] 225 So. 3d [405,] 407 [Fla. 2d DCA 2017] (quoting *Citizen's Prop. Ins. Corp. v. Amat,* 198 So. 3d 730, 734 (Fla. 2d DCA 2016)). In the case of a breached construction contract like Prime's contract with the Forbeses, the benefit-of-the-bargain remedy is "either the reasonable cost of completion, or the difference between the value the construction would have had if completed and the value of the construction that has been thus far performed." *Rector,* 479 So. 2d at 785 (citing *Grossman Holdings Ltd. v. Hourihan,* 414 So. 2d 1037 (Fla. 1982) (adopting section 346(1)(a) of the Restatement (First) of Contracts (Am. Law Inst. 1932), to cases involving breach of a construction contract)).

. . . .

[T]he reason the Forbeses did not produce that evidence [of market value of the house] was because they did not seek benefit-of-the-bargain damages. They sought to be put in the position they would have occupied had they never contracted with Prime. It was clear at trial that the Forbeses regarded the breach as total; indeed, they were explicit that they were entitled to suspend their own performance under the contract. And the damages they asked the court to award—return of payments made under the contract and the equity in their home at the time of contracting—were of a type that regarded the contract as void and attempted to restore the Forbeses to their precontractual situation. Those damages were inconsistent with an affirmance of the contract and request for damages approximating full performance.

*Id.* at 451–52.

Similarly, Judet terminated the contract because of Cano's breach and treated the breach as total. The damages Judet sought in his counterclaim were the type of damages which are inconsistent with the affirmance of the contract and demand for full performance. The trial court entered

judgment for Judet to place him in the position immediately prior to the contract by returning the payments he made to Cano less the quantum meruit value of Cano's work. The trial court did not err in its measure of damages under the facts of this case.

Cano also claims that trial court decided an issue not within the pretrial stipulation when it entered judgment for the amount Judet overpaid Cano. In the stipulation, one issue for determination was:

> If Contractor did materially breach the contract, then what is the reasonable value of the labor, services and materials in place performed by Contractor and whether and to what extent Owner is legally obligated for payment to Contractor.

It did not expressly address the issue of recovery by Judet. However, Judet's complaint specifically pled for the relief the trial court awarded, and the issue was raised and argued by Judet's attorney at the close of the trial without objection. Cano also did not object when Judet submitted his proposed final judgment which included a judgment for Judet for the overpayment.

Generally "[p]retrial stipulations prescribing the issues on which a case is to be tried are binding upon the parties and the court, and should be strictly enforced." *Broche v. Cohn*, 987 So. 2d 124, 127 (Fla. 4th DCA 2008) (quoting *Lotspeich Co. v. Neogard Corp.*, 416 So. 2d 1163, 1165 (Fla. 3d DCA 1982)). A court may decide an issue outside of the pretrial stipulation, however, where it is necessary to resolve the issues properly before the court. *Id.*

*Broche* serves as an example. There, Broche was an investor in a corporation in which Cohn was the principal officer. The corporation owned a parcel of property. The relationship between Broche and Cohn deteriorated. Broche executed a quit claim deed for the property to himself and his wife. Cohn also conveyed the property to himself. Cohn then sued Broche. During the proceedings, Cohn, on behalf of the corporation, sold the property to Mosler and then dismissed his suit. He retained the proceeds of the sale. Broche then filed suit against both Cohn and Mosler. *Id.* at 126.

In the final judgment, the court found that Mosler was entitled to the property. *Id.* It also found that the corporation, not Cohn, had legal title to the property and thus the proceeds of sale. Cohn had breached his fiduciary duty to the corporation by self-dealing. The court ordered Cohn to reimburse the corporation for the proceeds of sale. *Id.*

5

While the parties had filed a pretrial stipulation, reimbursement to the corporation of monies from the property sale was not listed. Nevertheless, our court held that such relief was proper because it was a necessary consequence of the court's determination that the corporation was the owner of the property prior to the sale. "[T]he issue of who was entitled to the proceeds from the sale was properly before the court despite not being listed in the pre-trial stipulation." *Id.* at 128. "[S]tipulations are not to be construed technically, but rather in accordance with their spirit and in furtherance of justice." *Id.* (quoting *Fed. Land Bank of Columbia v. Brooks*, 190 So. 737, 741 (1939)).

Similarly, in this case the court's judgment for Judet for the overpayment was necessary once the court determined that Cano was owed only $49,150 as the quantum meruit value of his services. From that issue, it necessarily followed that the monies Cano had already received should be returned to Judet. To hold otherwise would negate the trial court's determination that Cano was entitled only to the value of his services. Thus, its resolution was implicit in the issues presented, the pretrial stipulation notwithstanding.

In sum, the trial court correctly determined the measure of damages and properly and necessarily required Cano to pay Judet $49,150. We affirm the final judgment.

*Affirmed.*

CONNER, C.J., and GROSS, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

6